**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JORDAN HUFF,<br><br>　　　　　Defendant. | Case No.: 1:07-cr-00156 JLT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. 597) |

Jordan Huff is a federal prisoner seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (Docs. 597, 606.) He asserts that his unusually long sentence, medical circumstances, and rehabilitation are extraordinary and compelling reasons to reduce his sentence to time served. The government filed an opposition, (Doc. 620), to which Defendant replied. (Doc. 626.) For the reasons set forth below, Defendant's motion is **DENIED**.

**I.　　Background**

On December 22, 2009, Defendant was found guilty after a 20-day jury trial of 30 counts of Hobbs Act robbery (18 U.S.C. § 1951), one count of conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951), one count of conspiracy to use/carry/brandish a firearm in relation to a crime of violence (18 U.S.C. § 924(o)), and 30 counts of carrying a firearm during a crime of violence (18 U.S.C. § 924(c)(1)). (Docs. 312, 315.) On June 5, 2012, Defendant was re-sentenced as

1

follows: 121 months on each of the non- § 924(c) counts to be served concurrently; 84 months on the first count of brandishing a firearm, to be served consecutive to the conspiracy and robbery sentences; and 300 months for each of the remaining 29 discharging and brandishing offenses, with each term to run consecutively. (Doc. 429; *see also* Docs. 410, 423.)[1] In total, Defendant was sentenced to 8,905 months in BOP custody. (Doc. 429.) The Court also imposed a 60-month term of supervised release and ordered $33,940 in restitution. (*Id.* at 4, 6.)

Defendant is currently incarcerated at the Federal Correctional Institution in Victorville, California with a projected release date of December 3, 2649. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Jan. 21, 2026).

## II.    Legal Standard

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018, a defendant, or the Director of the Bureau of Prisons on the defendant's behalf, may move for a sentence reduction in the district court. 18 U.S.C. § 3582(c)(1)(A). Upon such motion,

> district courts may reduce [a defendant's] term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a).

*United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022). "Although a district court must

---

[1] When Defendant was originally sentenced in 2010, the sentencing judge deemed Count 3, a discharging § 924(c) count, as the "first" conviction for purposes of sentencing, based on the order it was charged in the indictment. (*See* Doc. 355.) Applying the rule of lenity on appeal, the Ninth Circuit held that "when the district court does not have sufficient information to determine the order in which the jury made determinations of guilt during jury deliberations on multiple counts under section 924(c), it must order the convictions so that the mandatory minimum sentence is minimized." *United States v. Major*, 676 F.3d 803, 815 (9th Cir. 2012). Accordingly, because the brandishing offense only required a mandatory minimum sentence of 7 years, as opposed to 10 years for discharging, the case was remanded to the district court to deem one of the brandishing counts as the first conviction. *Id.* This resulted in a 3-year reduction in Defendant's sentence. (*Compare* Doc. 355 *with* Doc. 429.)

conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (citing *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021)). The defendant bears the burden of "establish[ing] his eligibility for compassionate release." *Wright*, 46 F.4th at 951.

### III.    Discussion and Analysis

#### A.    Administrative Exhaustion

Section 3582(c) permits a defendant to apply to a federal district court for a sentence modification only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Defendant claims, and the government confirms, that he submitted a request for compassionate release to the warden of his BOP institution on October 15, 2023 and March 11, 2024, and that more than 30 days have passed. (Docs. 606 at 10; 606-1; 620 at 4.) Therefore, the Court finds that Defendant has exhausted his administrative remedies. *See United States v. Portillo*, 2023 WL 5955999, at *1 (E.D. Cal. Sept. 13, 2023) (finding defendant met exhaustion requirement because more than 30 days had elapsed since filing request with warden).

#### B.    Extraordinary and Compelling Reasons

To be eligible for compassionate release, a defendant must show, and the Court must consider, "extraordinary and compelling reasons" according to the current version of the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[2]

[2] Prior to the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). However, the Ninth Circuit recently held that in 2023, "having regained a quorum, the Commission revised § 1B1.13 to govern motions by a defendant." *United States v. Bryant*, 144 F.4th 1119, 1124 (9th Cir. 2025) (citing Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,256 (May 3, 2023)). "Now, courts are 'bound by' § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A)." *Id.* (citing *Chen*, 48 F.4th at 1098; *Concepcion*

These include the defendant's medical circumstances, age and other related factors, family circumstances, victimization, unusually long sentence, and "other reasons." *See generally* U.S.S.G. § 1B1.13(b)(1)-(6) (Nov. 1, 2023).

1.    Medical circumstances

Defendant contends that his medical circumstances constitute an extraordinary and compelling reason for compassionate release. (Doc. 606 at 25; Doc. 597 at 13.) His claim arises from injuries he sustained to his face and left leg after jumping from his cell bunk in December 2022. He asserts that, although he underwent surgery and initial treatment, the BOP has failed to provide adequate follow-up care. Defendant argues that he has not received "regular" physical therapy, that a recommended eye surgery has not been performed, and that there was a prolonged delay—approximately six months—in the removal of his ankle splint and sutures. (Doc. 606 at 25; Doc. 597 at 13.) He claims that these deficiencies have prevented his recovery, left him dependent on a wheelchair, and reflect the BOP's inability to address his "serious medical and surgical needs." (*Id.*)

Defendant relies on U.S.S.G. §§ 1B1.13(b)(1)(B)(i) and (ii), which apply when a defendant is "suffering from a serious physical or medical condition" or "serious functional or cognitive impairment … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §§ 1B1.13(b)(1)(B)(i), (ii).

Even assuming that Defendant's ankle and facial injuries qualify as a serious physical condition or functional impairment, he must still establish that he is not expected to recover and that his ability to provide self-care in custody has been substantially diminished. The medical record does not support either showing.

a.    *Relevant medical record*

After injuring himself by jumping from his cell bunk on December 3, 2022, Defendant was taken to Victor Valley Global Medical Center, where CT and x-ray imaging revealed

---

*v. United States*, 597 U.S. 481, 495 (2022)). The Court clarified that "*Aruda* has therefore been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions to § 1B1.13." *Id*. n.1.

multiple facial fractures and a left ankle fracture. (*See* Sealed Doc. 612 at 14; Sealed Doc. 613 at 59.) He was treated with medication, his ankle splinted, and he was discharged in "improved" and "stable" condition and transferred to Arrowhead Regional Hospital pending surgical care after swelling had decreased. (Sealed Doc. 613 at 60-61, 104.)

On December 9, 2022, hospital staff reported that Defendant was ambulatory and awaiting orbital surgery. (Sealed Doc. 612 at 8.) On December 14, 2022, Defendant underwent ankle surgery with placement of multiple plates and screws. (*Id*. at 105-06.) His post-operative plan included non-weight bearing for six weeks, a controlled ankle movement (CAM) boot at two weeks, and progressive weight bearing between six and twelve weeks. (*Id*. at 107.) He was transferred to Spring Valley Post Acute following his surgery. (Sealed Doc. 613 at 8.)

On December 23, 2022, staff at Spring Valley Post Acute reported that Defendant had discontinued physical therapy because he remained non-weight bearing on his lower extremities but was compliant with medications. (Sealed Doc. 612 at 6.) By February 24, 2023, Spring Valley staff reported that Defendant was receiving physical therapy. (*Id*. at 2.) A March 3, 2023 note indicated that he was not receiving therapy at that time. (Sealed Doc. 613 at 15.)

When Defendant returned to FCI Victorville in March 2023, he reported that he had not received therapy at Spring Valley but was "doing alright." (Sealed Doc. 613 at 11.) He was issued a wheelchair, crutches, a lower bunk, and acetaminophen. (*Id*. at 11, 19, 29.) On March 30, 2023, Defendant again reported he had not received therapy and could not walk. (*Id*. at 9.) A BOP physician ordered an urgent orthopedic referral, renewed pain medication, and obtained x-ray imaging. (*Id*.) The imaging showed no acute fracture, no hardware complication, and normal anatomical alignment. (*Id*. at 96.)

Defendant was seen at Arrowhead Regional Medical Centers' Orthopedic Clinic on June 14, 2023 for his first post-operative visit. (Sealed Doc. 613 at 72.) The provider noted that Defendant "could not come to clinic as he would not be transported." (*Id*.) Physical examination and imaging showed that the ankle was "healed and in good alignment," with "stable healing" and "no acute abnormality." (*Id*. at 72-73.) Physical therapy was ordered at Defendant's request. (*See id*.)

Subsequent imaging continued to reflect stable healing. X-rays from August 30, 2023 showed anatomical alignment and no hardware complication. (Sealed Doc. 613 at 65.) Facial x-rays from September 13, 2023 showed no fracture and unremarkable soft tissues. (*Id*. at 67; Sealed Doc. 625 at 6.) Ankle x-rays from October 11, 2023 showed maintained joint spaces, no fracture, and no malalignment. (Sealed Doc. 613 at 65.)

The record further reflects that Defendant regularly accessed medical services for other conditions, including extensive dental treatment throughout 2023, with normal head and neck findings and no reports of pain in the orbital region. (*See* Sealed Doc. 613 at 31-53.) He was also issued a cane on April 25, 2024, and continued to receive acetaminophen as late as June 13, 2024, at which time he was instructed to follow up with the Chronic Care Clinic as needed. (*Id.* at 1, 13.)

b.    *Discussion*

It does not appear that Defendant received physical therapy after his orthopedic follow up in June 2023—when physical therapy was ordered at his request. Even so, the medical record also does not show that this failure resulted in a condition from which he is not expected to recover or that it substantially diminishes his ability to provide self-care in custody. There is no record that Defendant made any request to BOP staff for physical therapy or for treatment related to his eye injury, despite being repeatedly counseled on how to access medical care, and submitting unrelated requests. (*See* Sealed Doc. 613 at 21-23, 33, 35, 37, 40, 43-44, 46-47, 51, 53; *see also* Sealed Doc. 625 at 43 (requesting copies of his medical records via Inmate Request to Staff (cop-out) form).)

By contrast, Defendant continued to receive pain medication for his ankle, indicating that his condition was being monitored and treated by BOP. Moreover, repeated imaging of Defendant's ankle and orbital region showed stable healing, proper alignment, and no acute fracture. The later issuance of a cane further reflects functional improvement in Defendant's mobility rather than deterioration.

Though Defendant raises legitimate concerns regarding the lack of documented physical therapy and eye surgery, and the delay in splint and suture removal, the record does not show

that these circumstances resulted in a medical condition from which Defendant is not expected to recover or that substantially diminishes his ability to provide self-care in custody. U.S.S.G. § 1B1.13(b)(1)(B). Nor does he argue or present evidence to that effect. *See United States v. Neal*, 2024 WL 1886476, at \*4 (E.D. Cal. Apr. 30, 2024) ("[D]efendant … does not advance any arguments or offer any evidence to show that his medical conditions have substantially diminished his ability to provide self-care.").

Defendant has been provided mobility aids, pain medication, imaging, specialty referrals, and continued access to medical services, which he has used for other conditions. As such, Defendant has not established that his medical circumstances satisfy the requirements of U.S.S.G. § 1B1.13(b)(1)(B).[3]

2.    Unusually long sentence

Defendant argues that changes in sentencing law—specifically, the First Step Act's amendments to 18 U.S.C. § 924(c) mandatory minimum sentences—constitute an "extraordinary and compelling reason" to reduce his sentence under § 3582(c)(1)(A)(i). He invokes § 1B1.13(b)(6) of the U.S. Sentencing Commission's current policy statement, which provides:

> Unusually Long Sentence.--If a defendant received an unusually long sentence **and has served at least 10 years of the term of imprisonment**, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (emphasis added).

Defendant cannot satisfy the threshold requirement of § 1B1.13(b)(6) because he has not served 10 years of his federal term of imprisonment. His federal sentence was ordered to run consecutively to a state sentence, and he did not begin serving his federal term until July 25,

---

[3] Defendant argues in passing that he is entitled to relief under U.S.S.G. § 1B1.13(b)(1)(D), which permits relief where a defendant is "housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency." Defendant, however, offers no argument or evidence explaining how this provision applies to his circumstances. Accordingly, the Court does not consider § 1B1.13(b)(1)(D) as a basis for relief.

7

2017. (*See* Doc. 429 at 2; Doc. 606-2 at 6-7.)[4] To date, Defendant has served approximately 8.5 years of his federal sentence. Thus, he is ineligible for relief under U.S.S.G. § 1B1.13(b)(6).

Defendant nevertheless argues that the Court may consider nonretroactive changes in law even if the 10-year requirement is not met. That position is inconsistent with the plain text of § 1B1.13(b)(6), which expressly conditions relief on the defendant having served at least 10 years. *See* Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254-01, 28259 (May 3, 2023) ("[T]o address administrative concerns raised by some commenters, the amendment limits the application of this provision to individuals who have served at least 10 years of the sentence the motion seeks to reduce.").

Even if the Court were to consider the effect of the First Step Act, Defendant's argument does not support the relief he seeks. Defendant was convicted of 30 violations of § 924(c), including 24 counts of brandishing a firearm and 6 counts of discharging a firearm during crimes of violence. (Doc. 312.) Under current law, those offenses would still carry mandatory consecutive sentences totaling approximately 2,726 months, or 227 years, not including his robbery and conspiracy sentences.[5] Although that term is substantially shorter than the 732-year sentence originally imposed, it remains an extraordinarily lengthy sentence reflecting the seriousness and number of Defendant's offenses. Defendant has not shown that the First Step Act would entitle him to the nearly 500-year reduction he seeks or otherwise justify relief to time served.

Accordingly, Defendant has not established an extraordinary and compelling reason for relief based on his unusually long sentence under U.S.S.G. § 1B1.13(b)(6).

[4] In August 2007, Defendant was sentenced to a term of 11 years in state custody after being found guilty by a jury of assault with a semiautomatic firearm during the commission of a crime and dissuading a witness by force or threat by acting maliciously and threatening, either directly or indirectly, to use force or violence against a victim. (*See* Presentence Investigation Report ¶¶ 270-284.)

[5] Defendant's § 924(c) convictions were "stacked," resulting in 8,784 months (732 years) of consecutive § 924(c) penalties alone. (Doc. 429.) The First Step Act eliminated "stacking" for first-time § 924(c) offenders by limiting the 25-year enhancement to cases in which a prior § 924(c) conviction has become final. *See* First Step Act, Pub. L. 115-391, Title IV, § 403(a), 132 Stat 5194, 5221-22 (2018); *see also United States v. Bryant*, 144 F.4th 1119, 1130 (9th Cir. 2025) (clarifying that in light of § 403, "a first-time § 924(c) offender cannot receive the 25-year enhanced sentence, no matter how many § 924(c) convictions he accumulates in the same case"). Therefore, if Defendant were sentenced today for the same conduct, each of his 24 brandishing convictions would carry a consecutive 7-year minimum, and each of his 6 discharging convictions would carry a consecutive 10-year minimum. 18 U.S.C. §§ 924(c)(1)(A)(ii), (iii). Those terms would run consecutively to the 121-month sentence imposed for his robbery and conspiracy convictions, resulting in a total sentence of approximately 2,847 months, or 237 years.

8

### 3.    Other arguments

#### a.    *Conditions of confinement*

Defendant contends that the "harsh" conditions of confinement at FCI Victorville justify compassionate release. (Doc. 606 at 28-29.) He also asserts that the COVID-19 pandemic "resulted in severe prison lockdowns during which inmates were confined to their cells for months—basically experiencing 'extra' punishment that they ordinarily would not have received." (Doc. 606 at 32-33.)

Generally, district courts may consider a defendant's conditions of confinement as part of the "extraordinary and compelling" inquiry. *See, e.g., United States v. Willis*, 663 F. Supp. 3d 1203, 1211 (D. Or. 2023); *United States v. Lopez-Ontiveros*, 2025 WL 1115052, at *8 (S.D. Cal. Apr. 15, 2025). However, district courts within the Ninth Circuit have consistently held that "general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release." *United States v. Kvashuk*, 2023 WL 3866678, at *2 (W.D. Wash. June 7, 2023) (quoting *United States v. Bolden*, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020)); *see also United States v. Menchaca*, 2021 WL 3271315, at *4 (N.D. Cal. July 30, 2021) (rejecting the "blanket argument that the existence of COVID-19 renders every prisoner's sentence 'more punitive' and in need of reduction"). *Lopez-Ontiveros* further explains that a defendant must show "real, individualized, and cognizable harm" resulting from his conditions of confinement. 2025 WL 1115052, at *7 (quoting *United States v. Martinez Encinias*, 682 F. Supp. 3d 993, 1006 (D.N.M. 2023)).

Defendant broadly claims that the court's reasoning in *Willis* applies in his case, noting that "[w]histleblowers have brought allegations of inappropriate conduct at Victorville." (Doc. 606 at 29.) However, he does not sufficiently describe the conditions at FCI Victorville generally, nor does he demonstrate how those conditions affected him personally.[6] *See Venters v.*

---

[6] Defendant cites an article discussing an Instagram account with potential links to Victorville staff that featured homophobic, sexist, and other offensive content. (Doc. 606 at 29 n.7.) In the article, a former case manager at the facility is quoted as saying that "treatment toward women and minorities there was horrible" and suggesting such conduct has persisted. *Instagram account potentially linked to COs at Calif. prison under scrutiny*, https://www.corrections1.com/social-media/articles/instagram-account-potentially-linked-to-cos-at-calif-prison-under-scrutiny-31PvX3odO4dDpD4c/ (last visited Jan. 21, 2026). Although this offers a glimpse into life at FCI Victorville from the perspective of a former correctional officer, it does not sufficiently describe the conditions at FCI Victorville by Defendant's account.

*United States*, 2023 WL 6147604, at *2 (D. Utah Sept. 20, 2023) ("Courts have generally held that harsh conditions faced by all inmates are not extraordinary within the meaning of the First Step Act. Indeed, Mr. Venters only alleges generalized harm applicable to every inmate at FCI Sheridan and does not explain how the conditions have created extraordinary and compelling reasons to release him individually.") (internal quotation marks, footnotes omitted).

However, allegations of staff misconduct are not unique to FCI Victorville. Moreover, that the pandemic resulted in harsher and more restrictive conditions is not unique to Defendant; every inmate in BOP custody during that time experienced similar restrictions. Accordingly, the Court does not find that the conditions of Defendant's confinement present an extraordinary and compelling reason warranting compassionate release.

### b. Rehabilitation

Defendant also relies on his rehabilitation as a basis for compassionate release. (*See* Doc. 606 at 35.) He points to his extensive participation in educational and vocational programming, completion of numerous college-level courses, a lack of recent disciplinary violations, and support from family and correctional staff. (*Id.* at 36-38.)

The Court does not question that Defendant has taken meaningful steps toward self-improvement while incarcerated. However, rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). Rather, rehabilitation may be considered only in combination with another qualifying extraordinary and compelling circumstance. *See Willis*, 663 F. Supp. 3d at 1211 ("a [d]efendant's clean prison record and steps toward rehabilitation are only relevant to the analysis if other factors are extraordinary and compelling"). Because the Court finds no qualifying extraordinary circumstance with which rehabilitation could be paired, Defendant's commendable rehabilitative efforts cannot support relief.

In sum, Defendant has not demonstrated the existence of any extraordinary and compelling reason warranting compassionate release under U.S.S.G. § 1B1.13. As such, the

Court does not consider the factors under 18 U.S.C. § 3553(a). *See Wright*, 46 F.4th at 945.[7]

**IV.    Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1.    Defendant Jordan Huff's motion for compassionate release (Doc. 597) is

**DENIED**.

IT IS SO ORDERED.

Dated:    **January 22, 2026**

_____
UNITED STATES DISTRICT JUDGE

---

[7] Defendant also asserts that, in assessing whether his 742-year sentence constitutes "just punishment" and is not "greater than necessary" to achieve the purposes of sentencing, the Court must consider his age at the time of the offenses. (Doc. 606 at 29.) He further contends that "just punishment" does not include exposure to a life-threatening illness or atypical confinement under extended lockdown conditions during the COVID-19 pandemic. (*Id.* at 32-33.) These arguments, however, invoke the sentencing factors set forth in 18 U.S.C. § 3553(a), rather than the threshold inquiry under U.S.S.G. § 1B1.13 as to whether extraordinary and compelling reasons for compassionate release exist. Because Defendant has not established eligibility for relief, the Court does not reach the § 3553(a) factors or these arguments.